CORNELIUS, Adm'x, etc., vs. THE CITY OF APPLETON.

*Negligence.—Repair of bridge.*

1. Where a bridge becomes insecure in the forenoon, needing repairs which cannot at once be made, the fastening securely across the end of the bridge, breast high, of a plank a foot wide, is a sufficient notice to travelers that the bridge is impassable.
2. Upon such a state of facts being shown by the plaintiff in an action to recover for the death of a person who fell through the bridge in attempting to cross it, a nonsuit should have been granted.

APPEAL from the Circuit Court for *Outagamie* County.

Action under the statute for causing the death of the plaintiff's intestate by suffering a bridge which was out of repair to be left open at night, without a watchman, proper guards, or a light to warn of danger, in consequence of which the intestate, without negligence on his part, fell through and was drowned. The facts proved are sufficiently stated in the opinion. After the plaintiff's case was closed, a motion for nonsuit was overruled. The circuit judge left it to the jury to say whether the plank placed across the end

of the bridge was sufficient notice to the deceased that the bridge was unsafe. Verdict for plaintiff; motion for a new trial overruled, and judgment on the verdict; from which defendant appealed.

*W. S. Warner*, for appellant.

*Hudd & Wigman*, for respondent:

Unless the negligence is very palpable, the question should be left with the jury. Negligence is very seldom shown by such direct and positive evidence that it can be taken from the jury. When the facts or the inferences from them are in any degree doubtful, the matter is for the jury. 13 N. Y., 533; 24 How. Pr., 172; 23 id., 492; 24 id., 16; 24 N. Y., 430; 1 Daly, 202; 19 Conn., 566; 3 E. D. Smith, 106; 20 Barb., 282; 6 Shep., 174; Story on Bail., §§ 11–14; Angell on Corp., §§ 27–51.

COLE, J. We think the motion for a nonsuit should have been granted, for the reason that the evidence on the part of the plaintiff not only disproved the allegation of negligence on the part of the city in respect to placing proper guards on the bridge to warn the traveling public of its dangerous condition, put did prove negligence on the part of the deceased. It appears that the bridge was broken on the morning of the day the deceased was drowned, so that the draw could not be closed. Nor could the injury be at once repaired. The south half of the draw was necessarily left open; and, about eighteen feet from the open water, a plank was placed across the bridge from side to side. The plank was a foot wide, and about breast high; and it is perfectly obvious that no person could reach the open draw without running against this plank. It is true, a temporary crossing had been made by means of a scow which was placed on the upper side of the bridge, over which foot passengers could cross. The scow did not reach

the south end of the bridge and a connection was made by means of plank from the scow to the bridge. But no person could reach this temporary crossing, even, without running against the plank extending across the bridge as above stated. And that plank, placed as it was, gave ample notice to travelers that the bridge was impassable. If a person, on coming to that obstruction, still persisted in attempting to cross the canal over the temporary crossing, he did so at his peril. There is surely no possible ground for saying that sufficient notice was not given by the city authorities that the bridge was unsafe and dangerous. What more could the city do than obstruct and block the passage in the manner it did? No person, in the exercise of ordinary care, upon coming to such an obstruction across a bridge, would attempt to go forward in the dark. The counsel for the respondent insisted that it was the duty of the city to place a light or station a watchman at the bridge, to warn the traveling public of its exposed condition. But what better warning could a traveler have of the impassable condition of the bridge, than to find the passage obstructed by a plank a foot wide and breast high, securely fastened, as the proof shows the plank was in this case? And the negligence of the deceased seems the greater when we consider that he crossed the bridge just before it was broken, and returned to it when it was very dark. Of course he knew nothing about the temporary crossing which had been prepared for foot passengers. He found the way blocked up. If he attempted to proceed, and fell into the canal and was drowned, his own negligence directly contributed to the fatal result. The probability is, that he fell into the canal at some distance below the bridge. However this may be, he surely could not have passed the obstruction placed upon the bridge, and have got into the canal at that point, while in the exercise of proper care and diligence.

All these facts were so plainly disclosed by the testimony given on the part of the plaintiff, that there was really no case to go to the jury. And certainly the plaintiff's case was not at all aided by the testimony introduced on the part of the defense.

*By the Court.*—The judgment of the circuit court is reversed, and a new trial awarded.