448

WADHAMS OIL COMPANY, Plaintiff, vs. THE STATE, Defendant.

*November 12, 1932—February 7, 1933.*

For the plaintiff there was a brief by *Fish, Marshutz & Hoffman,* attorneys, and *I. A. Fish, J. H. Marshutz,* and *W. H. Voss* of counsel, all of Milwaukee, and oral argument by *Mr. Fish* and *Mr. Marshutz.*

For the defendant there was a brief by the *Attorney General* and *Herbert H. Naujoks,* assistant attorney general, and oral argument by *Mr. Naujoks.*

A brief was also filed by *H. H. Thomas* and *Olin & Butler,* all of Madison, as *amici curiæ.*

The following opinion was filed December 6, 1932:

Rosenberry, C. J. This action was begun in the supreme court to recover on two causes of action, on account of money required to be paid to the state for the reason, as the state claims, that the plaintiff company is subject to the provisions of ch. 22 of the Laws of 1931. The action was begun by filing in the office of the clerk of this court a complaint and service of notice upon the defendant of the filing of the complaint and requiring the defendant to answer within twenty days, this apparently upon the theory

that the present action is one of the class of actions dealt with by ch. 285, Stats.

Sec. 285.01 provides:

"It shall be competent for any person deeming himself aggrieved by the refusal of the legislature to allow any just claim against the state to commence an action against the state by filing a complaint, setting forth fully and particularly the nature of such claim, with the clerk of the supreme court, either in term time or vacation," etc.

There is no allegation in the complaint that the causes of action sued upon arose out of the refusal of the legislature to allow any just claim. If this court has jurisdiction of this action it must be found in some other provision of the statute or some provision of the constitution.

All parties concede that no action may be maintained against the state except by and with its consent. Sec. 5 (12) of ch. 29, Laws of Special Session 1931, provides:

"No order shall be issued by any court to restrain or delay the enforcement of this section at the suit of the person, firm, corporation or association required to procure a license hereunder, but such aggrieved person shall pay the license fee as and when due, and if paid under protest may at any time within two years from the date of such payment sue the state in an action at law to recover the fee so paid, with legal interest thereon, from the date of payment."

It is apparent that under this section suit may be maintained against the state without filing a claim against the state for presentation to the legislature. By the enactment of the quoted portion of the section the legislature no doubt intended to waive to the fullest degree the immunity of the state from suit and to make it subject to suit in an ordinary action at law as and for money had and received. By the enactment of this provision the state created a new class of cases in which an action may be maintained against the state, but it did not designate the court in which the action should be brought nor the venue of the action.

Since the decision in *Dickson v. State,* 1 Wis. 110 (*122) (1853), this court has consistently held that the third section of the seventh article of the constitution, which provides that the "supreme court, except in cases otherwise provided in this constitution, shall have appellate jurisdiction only, which shall be coextensive with the state; but, in no case removed to the supreme court, shall a trial by jury be allowed," . . . was subject to the provisions of sec. 27 of art. IV, which provides that "the legislature shall direct, by law, in what manner, and in what courts, suits may be brought against the state." *Northwestern Mut. Life Ins. Co. v. State,* 163 Wis. 484, 155 N. W. 609, 158 N. W. 328 (1916).

It is only by the exercise of the power conferred upon the legislature by sec. 27 of art. IV that this court may take jurisdiction of actions other than those which involve the use of the prerogative writs. The extent of the jurisdiction conferred upon this court in cases where the state is a party is determined by the legislature. When in ch. 285, Stats., the legislature provided that in cases where the legislature had refused to allow a just claim, an action might be maintained against the state in this court, that determined the limits of this court's jurisdiction under the constitution. Ch. 22 of the Laws of 1931 nowhere contains a provision to the effect that suits to recover fees paid under that chapter may be brought in the supreme court, for the reason no doubt that to require actions to be brought in this court in hundreds of cases which this court is not equipped to try, would be detrimental to the public interest. Therefore this court has no jurisdiction of such actions.

The legislature must have intended, the state having waived its immunity to action by the provision quoted above, that the action might be brought in some court. There are in our judicial system several courts having jurisdiction over the subject matter of such an action,—that is, one to recover judgment as and for money had and received. Principal

among these courts is the circuit court. Sec. 261.01, Stats., provides:

"The proper place of trial of civil actions is as follows, respectively: . . .

"*Actions against the state.* Ninth. The place of trial of all actions authorized to be brought against the state or any of the state officers in their official capacity shall be Dane county," (Wisconsin).

We turn for a moment to a consideration of a somewhat analogous case. By ch. 624, Laws of 1913, the legislature authorized one Apfelbacher (*Apfelbacher v. State,* 160 Wis. 565, 152 N. W. 144) "to bring suit in such court or courts and in such form or forms as he may be advised for the purpose of settling and determining all controversies which he may now have with the state of Wisconsin, or its duly authorized officers and agents." . . . Under the provisions of that section an action was maintained by Apfelbacher against the state in the circuit court for Waukesha county. A demurrer *ore tenus* to the complaint was sustained, from which an appeal was taken to this court, where it was held that although the state had waived its immunity, it had not admitted its liability, and its liability was to be determined in accordance with the general principles of law applicable. The case does not throw much light upon the present situation except that it seems to have been conceded, and rightly so, that the action was properly brought in Waukesha county. It was further held that the waiver of immunity by the state was at its pleasure and that it might waive immunity in one case and not in another without denying to citizens the equal protection of the law. The claim set up in this case by the attorney general that the plaintiff should have filed his claim with the legislature as required by ch. 285 does not seem to have been made in that case, probably because of the broad and explicit language used in the act.

This case being one which does not fall within the class of cases dealt with in ch. 285, Stats., and the state by the enactment of ch. 29, Laws of Special Session 1931, having clearly waived its immunity to suit in the class of cases therein described, it is held that it thereby consented to be sued in a proper court having jurisdiction of the subject matter. However, sec. 261.01 (9) having provided that the place of trial of all actions brought against the state shall be in Dane county, an action can only be maintained in some court in Dane county having jurisdiction of the subject matter. If it had been the intent of the legislature to require claims for refunds under the act to be submitted to the legislature, no more would have been required than to say in the act that suit might be maintained against the state in accordance with the provisions of ch. 285, Stats. It was the evident purpose of the legislature to create a new class of claims as to which it waived immunity to suit and left the court and venue to be determined in accordance with general principles of law.

This court having no jurisdiction of either cause of action set out in the plaintiff's complaint, no adjudication of the plaintiff's rights can be had herein. The matters involved in the construction of the act have, however, been fully argued, a considerable part of the two-year limitation prescribed by the act has already expired, and in the public interest it is considered that the court should state its view of the law somewhat in the nature of an advisory opinion. We yield the more readily to this suggestion because of the policy of this state with reference to declaratory judgments.

In order to make clear our view of the law it will be necessary to state briefly the facts set out in the complaint. It is alleged in the complaint that the plaintiff is the owner of 103 pieces of property within the state of Wisconsin; that it is engaged in the business of buying, selling, manufacturing, and dealing in petroleum products and no other

business except the dealing in anti-freeze mixtures for motor vehicles. Paragraphs 4 and 5 set out the nature of the products dealt in; that upon each of the said pieces of real estate it operates what is known as a service or filling station; that "all of the business of the said stations is transacted from the platforms thereof and not within any buildings, except the business of freeing the working parts of motor vehicles of exhausted grease, which is, in some cases, carried on under shelter. That there is no place upon the said parcels of real estate designated for the sale of merchandise, and that merchandise is not sold thereat to the public at retail except as it is placed in motor vehicles, and that the plaintiff is not engaged in the chain-store business."

Sec. 5 of ch. 29 of the Laws of the Special Session of 1931 is set out in full. It is then alleged that the state has required the plaintiff to pay the sum of $4,640 in conformity with the requirements of sec. 5; then sets out facts upon the basis of which it is alleged that the act is discriminatory.

For a second cause of action the allegations contained in paragraphs 1, 3, 4, 5, 6, 8, 9, 11, 12, 13, 14, and 15 of the first cause of action are re-alleged. Plaintiff further alleges that it has 352 pieces of real estate of which it is either the owner or the lessee; that on each of said pieces of real estate there is located a filling or service station and that each one thereof has been leased by the plaintiff to a lessee; that at none of said places does plaintiff own any merchandise of any kind whatsoever; that it does not buy, sell, vend, or deal in any kind of merchandise at any of the said locations; that it does not own or operate any store or mercantile establishment where goods, wares, or merchandise are sold or offered for sale at retail at any of the said places; and that it does not have any lien upon any goods, wares, or merchandise or have any goods, wares, or merchandise on consignment at any of the said locations or filling stations;

that it has no interest, stock ownerships, general management, supervision, or control over the person in possession of or over the lessees of the said filling stations, and that the business there conducted is owned and operated by the lessees of the said real estate wholly independent of the plaintiff; that the state of Wisconsin required the plaintiff to pay license fees on account of such filling stations, and the recovery of the sum of $17,600 is sought.

There was a demurrer to the complaint, first, on the ground that the court had no jurisdiction, and second, that the complaint does not state facts sufficient to constitute a cause of action. The part of sec. 5 of ch. 29 of the Laws of 1931, Special Session, under and by virtue of which the state claims the right to exact the license fees described in the complaint is as follows:

"(1) Every person, firm, corporation or association engaged in the business of operating or maintaining in this state under the same general management, supervision and ownership two or more stores or mercantile establishments where goods, wares or merchandise are sold or offered for sale at retail shall for the purposes of this section be deemed to be engaged in the chain-store business. The fact that the several retail stores or mercantile establishments are ostensibly owned or operated by separate corporations shall not defeat the application of this section where such stores or establishments are under the same general management, supervision and majority stock ownership.

"(2) From and after February 15, 1932, and until January 1, 1934, no person, firm, corporation or association shall engage in the chain-store business in this state unless he shall first have secured a license to engage in such business from the department of agriculture and markets. Such license shall be issued for the calendar year and shall be renewable annually."

On behalf of the state it is argued that the service or filling stations fully described in the complaint constitute two or more stores or mercantile establishments where

goods, wares, or merchandise are sold or offered for sale and hence the plaintiff corporation is engaged in the chain-store business and is required to procure a license under the act in order to continue in business. Is an ordinary service or filling station such as described in the complaint a place where goods, wares, or merchandise are sold or offered for sale at retail within the meaning of the section? The position of the state is supported by the argument that gasoline, oils, and greases are goods, wares, or merchandise, and dictionary definitions are referred to at length. It is hardly necessary to repeat again what has so often been said by this court that in the construction of statutes the common, ordinary, or approved meaning of words is to be regarded as the one intended unless inconsistent with the manifest legislative purpose. *Battis v. Hamlin,* 22 Wis. 637; *Northwestern Iron Co. v. Industrial Comm.* 154 Wis. 97, 142 N. W. 271; *Van Dyke v. Milwaukee,* 159 Wis. 460, 150 N. W. 509. In common language a filling station is not referred to as a store or a mercantile establishment where goods, wares, or merchandise are sold or offered for sale at retail. If one were to stop five hundred well informed intelligent persons traveling into any city and ask them to stop at the first store or mercantile establishment where goods, wares, or merchandise were sold or offered for sale, it is quite probable that not a single one would stop at a filling station or service station such as is described in the plaintiff's complaint. This distinction which exists in the minds of the great mass of people in the use of these terms must have been present in the mind of the legislature when the act was passed. Had the legislature intended to include such establishments as are described in the complaint, it would have used appropriate language for that purpose. We therefore conclude that establishments of the kind described in the complaint are not within the terms of the act and that the plaintiff is entitled to recover the moneys paid under the act.

While it is easy to define a service station or filling station and distinguish it from a store or mercantile establishment, there will no doubt be many cases where the distinction cannot be drawn without difficulty. It will then become a question of fact whether the particular establishment is one thing or the other. It is not intended to indicate that every place where gasoline is sold is a service or filling station. If a store where goods, wares, and merchandise are sold also sells gasoline or operates in connection with the business a filling station, it will be necessary to determine which is the controlling element in the situation. Questions relating to mixed businesses will have to be determined as they arise. We entertain no doubt as to the classification of the establishments described in the plaintiff's complaint.

*By the Court.*—Action dismissed.

The following opinion was filed February 7, 1933:

PER CURIAM. Upon a motion for rehearing the defendant seeks a reversal of the decision so far as it holds that gasoline filling stations are not included in the definition of chain-store business. The argument runs thus: Gasoline is within the classification of goods, wares, or merchandise. Gasoline is kept for sale at retail at a filling station. A filling station being a place where goods, wares, or merchandise are kept for sale at retail, it is a store or mercantile establishment. Therefore, if any person, firm, corporation, or association owns and operates two or more filling stations, they are engaged in the business of operating and maintaining two or more stores or mercantile establishments where goods, wares, or merchandise are sold or offered for sale at retail. There is also a lengthy argument with respect to the intent of the legislature.

There is no difficulty in discovering the intent of the legislature. That is made plain by sec. 5 (2) of ch. 29, Laws of Special Session 1931. The legislature intended

to require a license fee from every person, firm, corporation, or association engaged in the chain-store business. Sec. 5 (1) defines what in the mind of the legislature amounted to a chain store as follows:

"Every person, firm, corporation or association engaged in the business of operating or maintaining in this state under the same general management, supervision and ownership two or more stores or mercantile establishments where goods, wares or merchandise are sold or offered for sale at retail shall for the purposes of this section be deemed to be engaged in the chain-store business."

The question is not what the legislature intended but what did it mean when it used the language quoted. If the legislature had intended to be all-inclusive, other appropriate language might have been used. In the definition it might have said, instead of a store or mercantile establishment, "a place," and inserted after the word "merchandise" the words "of any kind," and phrased the statute as follows:

"Every person, firm, corporation or association engaged in the business of operating or maintaining in this state under the same general management, supervision and ownership two or more places where goods, wares or merchandise of any kind are sold or offered for sale at retail shall for the purposes of this section be deemed to be engaged in the chain-store business."

So phrased the statute would have included filling stations and many other establishments not within the terms of the act as we shall see.

The case is argued here as if the court had invented some rule of construction. The legislature itself has established rules for the construction of statutes. (Ch. 370.) The first rule laid down, sec. 370.01 (1), is as follows:

"All words and phrases shall be construed and understood according to the common and approved usage of the language; but technical words and phrases and such others as may have acquired a peculiar and appropriate meaning

in the law shall be construed and understood according to such peculiar and appropriate meaning."

There are many places where goods, wares, and merchandise of some kind are kept for sale which would not be understood, according to the common and approved usage of the language, to be stores or mercantile establishments. Among these might be enumerated tailor shops, shoe-shining parlors, wood yards, lumber yards, coal yards, brick yards, stone quarries, news stands, fruit stands, flower stands, cheese factories, restaurants, hotels, and no doubt others. On many farms farm produce is kept for sale at retail and many small manufacturers maintain retail departments as a part of their business. The same argument which supports the conclusion reached in the brief that a gasoline filling station is a store would support the conclusion that a brick yard is a store. It is a place where goods, wares, and merchandise are kept for sale at retail. No one could reasonably argue that the legislature used the term "store" or "mercantile establishment" in any such wide, comprehensive, and unrestricted sense. No one has yet pointed out that according to the common and approved usage of the language the term "store" or "mercantile establishment" has ever been applied to a gasoline filling station. In thus interpreting the language of the statute we follow the command of the legislature. This statutory provision with respect to construction merely adopts the rule universally applied by courts. We must hold that the legislature intended to use the terms in the sense in which the legislature itself says it uses them, that is, according to the common and approved usage of the language.

In this case it is not necessary to resort to other rules of construction. If we were to do so, however, the first one with which we would meet would be the rule, universal in its application, that a tax cannot be imposed without clear

and express language for that purpose, and where ambiguity and doubt exist it must be resolved in favor of the person upon whom it is sought to impose the tax. *Dean v. Charlton*, 27 Wis. 522, and *United States v. Merriam*, 263 U. S. 179, 44 Sup. Ct. 69, 68 Lawy. Ed. 240. See 25 Ruling Case Law, p. 1092, § 307, and cases cited, particularly those in the supplemental annotations; also 59 Corp. Jur. p. 1131, notes 85 and 86.

Considering this statute generally in connection with other statutes relating to taxes, the legislature may well have thought that having already imposed a sales tax of five cents a gallon upon the use of gasoline by the operators of motor vehicles, approximately thirty-three and one-third per cent. *ad valorem,* that the business was already bearing its fair share of the tax burden.

The foregoing matters are merely makeweights, the question being determined by the language used and the rule prescribed by the legislature for its interpretation.

Motion denied, without costs.