# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2022AP1233 |

| | |
|---|---|
| COMPLETE TITLE: | Wisconsin Property Taxpayers, Inc.,<br>Plaintiff-Respondent,<br>v.<br>Town of Buchanan,<br>Defendant-Appellant. |

ON BYPASS FROM THE COURT OF APPEALS

| | |
|---|---|
| OPINION FILED: | June 29, 2023 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | March 13, 2023 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Outagamie |
| JUDGE: | Mark J. McGinnis |

JUSTICES:
REBECCA GRASSL BRADLEY, J., delivered the majority opinion for a unanimous Court. REBECCA GRASSL BRADLEY, J., filed a concurring opinion in which ROGGENSACK, J. joined.

NOT PARTICIPATING:

ATTORNEYS:

For the defendant-appellant, there were briefs (in the court of appeals) filed by *Richard J. Carlson* and *Town Counsel Law & Litigation, LLC,* Kaukauna. There was an oral argument by *Richard J. Carlson.*

For the plaintiff-respondent, there was a brief (in the court of appeals) filed by *Richard M. Esenberg, Luke N. Berg, Lucas T. Vebber* and *Wisconsin Institute for Law & Liberty, Inc.,* Milwaukee. There was an oral argument by *Lucas T. Vebber.*

No. 2022AP1233
(L.C. No. 2021CV712)

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

STATE OF WISCONSIN    :    IN SUPREME COURT

**Wisconsin Property Taxpayers, Inc.,**

    **Plaintiff-Respondent,**

    **v.**

**Town of Buchanan,**

    **Defendant-Appellant.**

**FILED**

**JUN 29, 2023**

Samuel A. Christensen
Clerk of Supreme Court

REBECCA GRASSL BRADLEY, J., delivered the majority opinion for a unanimous Court. REBECCA GRASSL BRADLEY, J., filed a concurring opinion in which ROGGENSACK, J. joined.

APPEAL from a judgment and an order of the Circuit Court for Outagamie County, Mark J. McGinnis, Judge. *Affirmed.*

¶1 REBECCA GRASSL BRADLEY, J. The Town of Buchanan appeals the circuit court's grant of summary judgment in favor of Wisconsin Property Taxpayers, Inc. (WPT). The circuit court declared the Town's Transportation Utility Fee (TUF) to be a property tax subject to the Town's levy limit.[1] Wisconsin Stat.

---

[1] The Honorable Mark J. McGinnis, Outagamie County Circuit Court, presided.

§ 66.0827 (2021-22)[2] authorizes municipalities to establish utility districts to fund highways, sewers, and other "public improvement[s] provided in the district." The funding for a utility district must be provided through "taxation of the property in the district[.]" § 66.0827(2). The levy limit statute, Wis. Stat. § 66.0602, limits how much, and under what circumstances, a political subdivision may increase its property tax levy. The circuit court reasoned a "taxation of property" and a property tax are effectively the same and therefore concluded the money raised for the district fund is subject to the Town's property tax levy limit. After the Town appealed, the parties filed a joint petition for bypass of the court of appeals, which this court granted.

¶2 WPT contends the TUF is unlawful on three grounds. First, Wisconsin Statutes do not authorize municipalities to impose a TUF on property owners based on estimated use of the municipality's roads. Second, the Town did not reduce its property tax levy to account for the TUF and accordingly has exceeded its levy limit. Third, the fee structure implemented by the TUF violates the Uniformity Clause under Article VIII, Section 1 of the Wisconsin Constitution. We reach only the first two arguments, with which we agree and hold that funds raised for utility districts under Wis. Stat. § 66.0827 are

---

[2] All subsequent references to the Wisconsin Statutes are to the 2021-22 version unless otherwise indicated.

2

property taxes subject to municipal levy limits. Accordingly, we affirm the decision of the circuit court.

I. BACKGROUND

¶3 The rising costs of maintaining public roads within the Town have become a long-term concern for the Town's board. The board anticipated needing to reconstruct as much as 44% of the Town's roads over the next ten years. Consequently, the board decided it needed to raise money beyond its current levy limit. The board submitted a referendum to Town residents, giving them a choice of raising the property tax levy, imposing a special assessment on all property, or imposing a TUF. After voters chose a TUF, the board adopted Town ordinance § 482 in December 2019 to fund future road construction projects through a transportation utility fee. In relevant part, the ordinance states:

> A. The Town of Buchanan is hereby establishing a Transportation Utility District. The operation of the Transportation Utility District shall be under the day-to-day management of the Town Administrator and under the supervision of the Town Board. He/she, or a designated representative, shall provide an annual estimate to the Town Chairperson by October 1 of each year.
>
> B. The Town, acting through the Transportation Utility District, may, without limitation due to enumeration, acquire, construct, lease, own, operate, maintain, extend, expand, replace, repair, manage and finance such transportation facilities and related facilities, operations and activities, as are deemed by the Town to be proper and reasonably necessary to provide safe and efficient transportation facilities within the Town. The following activities to be funded by the transportation utility fee are the cost of utility

> district highways, stormwater management, sidewalks, street lighting, traffic control and the cost of any other convenience or public improvement provided in the District and not paid in full by special assessment.

Town of Buchanan Ordinances § 482-3 (2021). To raise funds for the utility district, the Town implemented the TUF:

> A. Every developed property within the Town of Buchanan shall pay a transportation utility fee.
>
> B. The Town Board shall by resolution determine the annual amount to be funded by a transportation utility fee, formulas for the calculation of the fee and specific use category classifications. Changes in formulas and classifications may be made by further resolution of the Town Board. All fees established pursuant to this section shall be fair and reasonable. A schedule of current fees shall be maintained and on file in the office of the Town Clerk.

§ 482-4.

¶4  After enacting the ordinance, the Town administrator set the TUF target funding amount at $875,000 annually. The board then announced a formula and fee based on estimated use of the Town's roads by each developed property within the municipality. Under the Town's funding scheme, all residential properties must pay the same fee, while commercial properties must pay a variable fee based on the size and type of business and the number of estimated "trips" on municipal roads the business is expected to generate. These fees range from roughly $300 for residential properties to more than $8,000 annually for some commercial properties. In total, the TUF collected more than $855,000 in 2020.

4

¶5   Before adopting ordinance § 482, the Town paid for road construction on a "pay as you go" basis from its general property tax levy. The Town's total property tax levy for 2020 was $2,374,348. In 2021, after enacting the ordinance, the Town's property tax levy was $2,490,680, reflecting the maximum increase allowed under Wis. Stat. § 66.0602. That year, the Town Board again set the "annual amount to be funded" by the TUF at approximately $855,000. The Town handled funds collected under the TUF separately and in addition to the general tax levy in 2021, resulting in a net increase in municipal tax revenue of approximately 34% beyond the levy limit.

¶6   In September 2021, WPT brought this action against the Town, seeking declaratory and injunctive relief. The parties stipulated to the facts, and both parties moved for summary judgment. WPT alleged the TUF is a property tax subject to municipal levy limits under Wis. Stat. § 66.0602; therefore, any revenue raised through the TUF must be offset by a reduction in the Town's general property tax levy. WPT also sought a declaration that the adopted method of taxation, based on estimated use of municipal roads, violates the Uniformity Clause of the Wisconsin Constitution because the Town ordinance does not allocate the TUF based on property value. In response, the Town argued Wis. Stat. § 66.0827 authorizes a special tax not subject to levy limits or the requirement of uniformity.

¶7   The circuit court granted summary judgment in favor of WPT, declaring the TUF to be a property tax subject to the Town's levy limit. It also permanently enjoined the Town from

5

levying, enforcing, or collecting the TUF in any amount above its levy limit. This appeal followed.

## II. STANDARD OF REVIEW

¶8 In this case, we "independently review a grant of summary judgment using the same methodology of the circuit court[.]" Kemper Indep. Ins. Co. v. Islami, 2021 WI 53, ¶13, 397 Wis. 2d 394, 959 N.W.2d 912 (quoting Talley v. Mustafa, 2018 WI 47, ¶12, 381 Wis. 2d 393, 911 N.W.2d 55). "Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law." Id. (quoting Talley, 381 Wis. 2d 393, ¶12).

¶9 This case also requires us to interpret and apply several Wisconsin statutes. "The interpretation and application of statutes present questions of law that we review independently, benefitting from the analyses of the circuit court[.]" Eau Claire Cnty. Dep't of Human Servs. v. S.E., 2021 WI 56, ¶13, 397 Wis. 2d 462, 960 N.W.2d 391 (citing State v. Stephenson, 2020 WI 92, ¶18, 394 Wis. 2d 703, 951 N.W.2d 819).

## III. DISCUSSION

¶10 Despite being labeled a "fee," the parties do not dispute the TUF is in fact a tax on Town residents. "The purpose, and not the name it is given, determines whether a government charge constitutes a tax." Bentivenga v. City of Delavan, 2014 WI App 118, ¶6, 358 Wis. 2d 610, 856 N.W.2d 546 (citing City of Milwaukee v. Milwaukee & Suburban Transp. Corp., 6 Wis. 2d 299, 305-06, 94 N.W.2d 584 (1959)). A "fee" imposed for the purpose of generating revenue for the municipality is a

6

tax, and without legislative permission it is unlawful. Id., ¶11 (citing Milwaukee & Suburban Transp. Corp., 6 Wis. 2d at 306). The parties are correct; the TUF is a tax because the Town imposed it on a class of residents for the purpose of generating revenue. The parties do, however, dispute its lawfulness. Specifically, the parties disagree on (1) whether Wis. Stat. § 66.0827, which governs the formation and funding of utility districts, authorizes the Town's taxation scheme and (2) whether the taxation of property to fund a utility district is nonetheless subject to property tax levy limits under Wis. Stat. § 66.0602. WPT argues the "taxation of the property in the district" under § 66.0827 is a property tax subject to other requirements of the Wisconsin Statutes. In contrast, the Town contends the utility district statute authorizes a form of special tax, bound only by the procedural requirements of that section. For the reasons that follow, we agree with WPT.

A. Authorization of Taxation

¶11 As Chief Justice John Marshall famously wrote, "the power to tax involves the power to destroy[.]" McCulloch v. Maryland, 17 U.S. 316, 431 (1819). Cognizant of the consequential power the State wields when it imposes taxes on the people, "Wisconsin recognizes the general rule of construction that a tax cannot be imposed without clear and express language for that purpose, and where ambiguity and doubt exist, it must be resolved in favor of the person upon whom it is sought to impose the tax." City of Plymouth v. Elsner, 28 Wis. 2d 102, 106, 135 N.W.2d 799 (1965) (citing Wadhams Oil Co.

7

v. State, 210 Wis. 448, 459, 245 N.W. 646 (1933)).  Like cities, towns "have no inherent power to tax.  [Towns] may only enact the types of taxes authorized by the legislature."  Blue Top Motel, Inc. v. City of Stevens Point, 107 Wis. 2d 392, 395, 320 N.W.2d 172 (1982) (citing Jordan v. Menomonee Falls, 28 Wis. 2d 608, 621, 137 N.W.2d 442 (1965)).

¶12 We first examine whether Wis. Stat. § 66.0827 authorizes the Town's implementation of the TUF with "clear and express language for that purpose."  Elsner, 28 Wis. 2d at 106. Our interpretation of Wis. Stat. § 66.0827 "'begins with the language of the statute.'  If the meaning of the language is plain, our inquiry ordinarily ends."  Milwaukee Dist. Council 48 v. Milwaukee County, 2019 WI 24, ¶11, 385 Wis. 2d 748, 924 N.W.2d 153 (quoting State ex rel. Kalal v. Cir. Ct. for Dane Cnty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110) (citation omitted).  Consideration of a "statute's context and structure are critical to a proper plain-meaning analysis." Brey v. State Farm Mut. Auto. Ins., 2022 WI 7, ¶11, 400 Wis. 2d 417, 970 N.W.2d 1 (citing Milwaukee Dist. Council 48, 385 Wis. 2d 748, ¶11).

¶13 Wisconsin Stat. § 66.0827 provides, in relevant part:

(1) Towns . . . may establish utility districts.

> (b) In towns, the town board may direct that the cost of any convenience or public improvement provided in the district and not paid for by special assessment be paid from the district fund under sub. (2).

8

> (2) The fund of each utility district shall be provided by <u>taxation of the property in the district</u>, upon an annual estimate by the . . . town chairperson[.]

(Emphasis added). In enacting the TUF, the Town implemented a taxation scheme based on property owners' estimated usage of roads within the municipality. Town ordinance § 482-4(B) states the Town board "shall by resolution determine . . . formulas for the calculation of the fee and specific use category classifications." Acting under this ordinance, the board developed a formula for funding the utility district derived from a statistical analysis of road usage by various property types within the municipality, divided into various "use category classifications." The Town uses that formula to allocate taxes across all developed property in the municipality.

¶14 Wisconsin Stat. § 66.0827, however, authorizes "taxation of the property in the district," not taxation based on estimated usage of roads in the district. Applying the clear and express language of the statute, a "taxation of the property" is merely another way of saying a "property tax." A "taxation of the property" and a "property tax" are materially the same. As explained more fully below, property taxation may not exceed municipal levy limits, with exceptions that do not apply in this case. See supra Section III.B. Accordingly, § 66.0827 provides a mechanism for allocating taxation within a utility district, but does not authorize taxation above and beyond a municipality's levy limit.

¶15 The Town contends "taxation of the property" under Wis. Stat. § 66.0827 is a "special tax" but not a general property tax. In its statutory analysis, the Town primarily argues § 66.0827 would lack any purpose if district funding were subject to the levy limit because a municipality would not undertake the effort to establish a utility district if it were not a separate source for funding public improvements. In the Town's view, the legislature "intended" the utility district as an alternative to general property taxes and special assessments. For several reasons, we are unpersuaded by the Town's reading of the statute.

¶16 First, "the legislature knows how to write a statute accomplishing the work [the Town] would have Wis. Stat. [§ 66.0827] perform." Teigen v. Wisconsin Elections Comm'n, 2022 WI 64, ¶49, 403 Wis. 2d 607, 976 N.W.2d 519 (lead op.) (citing State v. Yakich, 2022 WI 8, ¶24, 400 Wis. 2d 549, 970 N.W.2d 12). Wisconsin Stat. § 74.01(5) defines "special tax" to mean "any amount entered in the tax roll which is not a general property tax, special assessment or special charge." The legislature could have specifically authorized municipalities to fund utility districts through a "special tax" as defined in § 74.01(5), but it did not. Instead, utility districts must be funded via "taxation of the property" and as a property tax, such taxation must comport with the statutes governing property taxes, including the levy limit mandated under Wis. Stat. § 66.0602. The Town offers no authority to support its characterization of the TUF as a "special tax" under Chapter 74

10

that would be exempt from a municipal levy limit, rather than a general property tax.

¶17 Second, the Town effectively asks this court to conclude the legislature "hid[] [an] elephant in [a] mousehole[.]" Id., ¶63 (majority op.) (quoting Whitman v. American Trucking Ass'n, 531 U.S. 457, 468 (2001)) (modifications in the original). The negligible difference in language——"taxation of the property" as opposed to "property tax"——cannot bear the weight of the work the Town would assign it. More plausibly, "taxation of the property in the district" carries no meaningful difference from "property taxes" beyond differentiating between property taxes imposed within a discrete taxation district and the "general property tax" imposed on all non-exempt property owners in the municipality as a whole. Because the public improvement funded by a utility district may benefit only select properties within the municipality, the legislature limited apportionment of such property taxes to the "property in the district" alone. Carving out particular properties within the municipality for imposition of a TUF does not change its nature as a property tax.

¶18 Because a TUF is a property tax, its funding through the establishment of a utility district must follow the procedures outlined in Chapter 70 of the Wisconsin Statutes. "The assessment of general property for taxation in all the towns, cities and villages of this state shall be made according to this chapter unless otherwise specifically provided." Wis. Stat. § 70.05(1) (emphasis added). Chapter 70 outlines a

procedure for calculating an ad valorem property tax, meaning one based on the market value of the property.  In calculating estimated use of roads, the Town bases the TUF on the class of the property and its commercial characteristics, not the value of the property.  Because Wis. Stat. § 66.0827 does not authorize "taxation of property" to be based on anything other than property value, the TUF's assessment methodology is unlawful.

¶19 Chapter 70 also exempts certain properties from property taxation altogether.  Wis. Stat. § 70.01 ("Taxes shall be levied, under this chapter, upon all general property in this state except property that is exempt from taxation.") (emphasis added).  The Town imposes the TUF upon all developed properties in the district, regardless of their tax-exempt status.  The law does not give the Town any authority to impose a property tax on tax-exempt properties within the municipality.

¶20 The Town reads Wis. Stat. § 66.0827 as a standalone statutory taxation scheme not subject to Chapter 70 or any other provision of the Wisconsin Statutes.  Under the Town's reasoning, the only procedure binding the Town appears in subsection (2), which requires "an annual estimate by . . . the town chairperson."  Once the estimate is made, the Town argues it should be permitted to impose the tax by any reasonable means.  In the absence of an express directive by the legislature exempting utility districts from Chapter 70, which applies to all property taxes imposed in the state, we have no authority to read one into the statute.  "[W]hat a text chooses

12

not to do" is as significant "as its affirmative dispositions." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretations of Legal Texts 57 (2012). For this reason, "[w]e do not read words into a statute . . . rather, we interpret the words the legislature actually enacted into law." State v. Hinkle, 2019 WI 96, ¶24, 389 Wis. 2d 1, 935 N.W.2d 271 (quoting State v. Fitzgerald, 2019 WI 69, ¶30, 387 Wis. 2d 384, 929 N.W.2d 165).

¶21 Nothing in Wis. Stat. §66.0827 conflicts with Chapter 70. A statutory process to determine a budgetary estimate differs from a statutory process to levy a tax. Subsection (2) merely specifies how the Town may set the desired taxation amount, pending approval by the Town's board. Nothing in the text authorizes the imposition of that amount free from the restrictions imposed under other statutes broadly applicable to property taxation. The imposition of property taxes to fund a public improvement under § 66.0827 must follow the procedures that apply to all property taxes in this state. Because the Town failed to follow those procedures, the TUF is unlawful.

## B. Levy Limits

¶22 The law limits the amount by which municipalities may increase property taxes. "[Wisconsin Stat. §] 66.0602, among other provisions, includes a limit on the amount a governmental subdivision may increase its property tax levy in a given year." Brown County v. Brown Cnty. Taxpayers Ass'n., 2022 WI 13, ¶23, 400 Wis. 2d 781, 971 N.W.2d 491. The statute provides:

13

>   (2) Levy Limit.
>
>       (a) Except as provided . . . no political
>           subdivision may increase its levy in any year
>           by a percentage that exceeds the political
>           subdivision's valuation factor. . . . [T]he
>           base amount in any year, to which the limit
>           under this section applies, shall be the
>           actual levy for the immediately preceding
>           year.

§ 66.0602(2). The statute lists tax increases to which the levy limit does not apply, including assuming responsibility for municipal services, servicing municipal debt, bridge and culvert repair, and payments to public libraries. § 66.0602(3). In addition, if a municipality wants to exceed its levy limit under subsection (2), the statute allows it to do so only with the approval of the electorate:

>   (4) Referendum exception.
>
>       (a) A political subdivision may exceed the levy
>           increase limit under sub. (2) if its governing
>           body adopts a resolution to that effect and if
>           the resolution is approved in a
>           referendum. . . . The resolution shall
>           specify the proposed amount of increase in the
>           levy, the purpose for which the increase will
>           be used, and whether the proposed amount of
>           increase is for the next fiscal year only or
>           if it will apply on an ongoing basis.

§ 66.0602(4).

¶23 The statute expressly limits year-over-year increases in municipal property tax levies to the amount of the valuation factor, the "percentage change in the political subdivision's . . . value due to new construction[,]" effectively freezing property taxes on existing property within the municipality. Wis. Stat. § 66.0602(1)(d). Although the

14

legislature affords town boards a measure of flexibility by exempting certain types of spending from the levy limits, the legislature allows town boards to raise their levy limits only with the voters' consent through referendum.

¶24 An exception for spending on public improvements or utility districts is not listed in Wis. Stat. § 66.0602(3). Nor does Wis. Stat. § 66.0827 exempt funds raised to support a utility district from municipal levy limits. We may not add exceptions to the levy limit statute. See Wisconsin Legislature v. Palm, 2020 WI 42, ¶30, 391 Wis. 2d 497, 942 N.W.2d 900 ("[D]espite the detailed nature of the list, and the Legislature's consideration of acts of DHS and its consideration of 'orders,' no act or order of DHS pursuant to Wis. Stat. § 252.02 is exempted from the definition of 'Rule.'"). It is the legislature's prerogative to choose which types of spending are exempt from levy limits——and which are not. In the absence of an applicable exception, the Town may not increase its property tax levy beyond the limit allowed by law.

¶25 The Town did put a referendum before its residents, but the voters rejected an increase in the levy limit under Wis. Stat. § 66.0602(4). The option Town residents chose——imposing the TUF——was offered as an alternative to raising the levy limit. The Town does not argue the voters consented to an increase in the levy limit.

¶26 The Town argues the taxation funding the utility district supports a separate "governmental unit" to which it has transferred responsibility to provide a public improvement;

15

therefore, the taxation of the district should not be considered part of the Town's property tax levy. The Town points to Wis. Stat. § 66.0602(3)(a) as evidence the legislature contemplated transferring responsibility to other governmental units, with only a transfer of "services" requiring a reduction in the levy limit. Because the utility district has assumed responsibility for a public improvement, and not a "service" as that term is used, the Town claims it may transfer responsibility for road reconstruction without reducing its levy limit.

¶27 This strained interpretation of the levy limit statute disregards the fact that levy limits apply to "political subdivisions," which means a "city, village, town, or county." Wis. Stat. § 66.0602(1)(c). Similarly, property taxes are imposed by "taxation districts," which means a "town, village or city in which general property taxes are levied and collected." Wis. Stat. § 70.045. A utility district is not a taxation district under the statutory definition, which means it may not impose property taxes at all; only the municipality may do so. Although a town may establish a utility district, the town itself levies the taxes to fund the district; the town later allocates the funds raised to the utility district. See Wis. Stat. § 66.0827(1)(b) ("In towns, the town board may direct that the cost of any convenience or public improvement provided in the district and not paid for by special assessment be paid from the district fund under sub. (2)."). Because the municipality levies the taxes, state law subjects them to the municipality's levy limit.

16

¶28 The Town also argues that if funds raised for a utility district count against the municipality's levy limit, the utility district statute fails to serve any purpose. Under the Town's interpretation, a municipality would undertake the administrative effort to establish a utility district apart from the municipality only if district taxation is similarly separate from municipal taxation. Otherwise, the Town argues, any public improvement the utility district could fund may also be funded by the municipality's general property tax levy directly.

¶29 The Town's argument fails to consider a utility district comprising only a portion of a municipality. In this case, the Town established the utility district to cover the entire municipality, but a utility district could encompass some subset of the municipality, with an increased property tax imposed only on property within the district. The statutory text supports this interpretation by referencing "taxation of the property in the district." Wis. Stat. § 66.0827(2) (emphasis added). If the municipality provides a public improvement to only a portion of the properties in the municipality, the utility district statute allows the town board to apportion taxes among those properties to fund the improvement rather than requiring the entire municipality to share the cost. Localized apportionment changes the scope of the taxation but does not transform the taxation into something other than a property tax, nor does it exempt the taxation from municipal levy limits.

17

¶30 Taxation through utility districts parallels the statewide taxation schemes for stadium districts. Wisconsin Stat. § 77.705 establishes a "baseball park district" spanning several counties in the Milwaukee area, and Wis. Stat. § 77.706 establishes a "football stadium district" spanning several counties near Green Bay. Under both statutes, the legislature enacted special taxation of activity within the local communities benefitting substantially from stadium projects, rather than spreading the cost of those projects across the entire state. In a similar fashion, municipalities may apportion particular costs among properties within established utility districts in which the municipality provides the public improvement, rather than imposing costs on all properties within the municipality.

¶31 Contrary to the Town's argument, applying the levy limits to utility districts does not render the utility district statute surplusage. The procedures established under Wis. Stat. § 66.0827 create a mechanism for funding public improvements through taxation of property in the district rather than taxation of all property in the municipality as a whole, and nothing in the statute authorizes property taxation over and above the levy limit. We hold the taxation of property funding a utility district under Wis. Stat. § 66.0827 is subject to municipal levy limits. Because the Town's referendum did not ask the voters to authorize an increase of the levy limit to fund the utility district, the Town unlawfully exceeded its levy limit.

18

IV. CONCLUSION

¶32 Wisconsin law prescribes certain procedures a municipality must follow for funding public improvements. In this case, the Town did not follow them. The imposition of property taxes over and above the Town's levy limits requires the consent of the voters within the municipality. Nothing in the statutes permits the Town to bypass levy limits for the purpose of imposing a TUF on property owners in the municipality.

By the Court.——The judgment and order of the Circuit Court are affirmed.

¶33 REBECCA GRASSL BRADLEY, J.   *(concurring)*.   The court resolves this dispute solely on statutory grounds but Wisconsin Property Taxpayers, Inc. (WPT) also argues the Transportation Utility Fee (TUF) violates the Uniformity Clause of the Wisconsin Constitution, which guarantees "[t]he rule of taxation shall be uniform[.]"  Wis. Const. art. VIII, § 1.  "This court does not normally decide constitutional questions if the case can be resolved on other grounds;" however, such "constitutional avoidance" is prudential, not jurisdictional.  Gabler v. Crime Victims Rts. Bd., 2017 WI 67, ¶¶51-52, 376 Wis. 2d 147, 897 N.W.2d 384 (quoting Adams Outdoor Advert., Ltd. v. City of Madison, 2006 WI 104, ¶91, 294 Wis. 2d 441, 717 N.W.2d 803; Kollasch v. Adamany, 104 Wis. 2d 552, 561, 313 N.W.2d 47 (1981)).  Sometimes the public's interest in a definitive answer to an important constitutional question compels the court to "recognize[] that the principle of constitutional avoidance gives way[.]"  See id., ¶52 (citing Buckingham v. State ex rel. Killoran, 35 A.2d 903, 904-05 (1944); State ex rel. Bland v. St. John, 13 So. 2d 161, 170 (1943)).  For this reason, "the greatest of our judges have not always followed [the constitutional avoidance doctrine] as a rigid rule.  Perhaps had they done so the great opinion of Chief Justice [John] Marshall in Marbury v. Madison would never have been written."  Id. (quoting Clay v. Sun Ins. Off. Ltd., 363 U.S. 207, 223 (1960) (Black, J., dissenting)).

¶34 On the one hand, the public benefits from a definitive interpretation of a constitutional provision, provided the

analysis is rooted in the original meaning of the text, as informed by history. See New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. __, 142 S. Ct. 2111, 2127 (2022). Indeed, to a significant degree, the people of Wisconsin adopted a two-tiered system of appellate review to enable this court to focus on addressing important questions of law. Citizens Study Comm. on Jud. Org., Report to Governor Patrick J. Lucey 78 (1973). Undoubtedly, this court has been "designated by the constitution . . . as a law declaring court." See Cook v. Cook, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997) (quoting State ex rel. La Crosse Trib. v. Cir. Ct. for La Crosse Cnty., 115 Wis. 2d 220, 229–30, 340 N.W.2d 460 (1983)). A rigid constitutional avoidance doctrine would effectively override the people's sovereign will and leave their liberties subject to arbitrary and capricious government action.

¶35 On the other hand, an incorrect interpretation of constitutional text is not easily undone. See Brown v. Allen, 344 U.S. 443, 540 (1953) (Jackson, J., concurring in the result) ("We are not final because we are infallible, but we are infallible only because we are final."). For this reason, a narrow decision is often preferred.

¶36 On balance, the court should have exercised its discretion in this case to address WPT's uniformity claim. The public's interest in a definitive answer to this constitutional question, coupled with the interest of municipal governments in understanding the parameters governing the creation of utility districts, outweigh the justifications for constitutional

avoidance. Whether TUFs survive constitutional scrutiny is of great public importance, and it is likely to arise again as municipalities throughout the state consider implementing them. Addressing the merits in this case to resolve uncertainty going forward would have been the best course. See Gabler, 376 Wis. 2d 147, ¶¶52-53 (choosing to address a constitutional question because the question was of "great public importance"); James v. Heinrich, 2021 WI 58, n.18, 397 Wis. 2d 350, 960 N.W.2d 350 (lead op.) (same). Under well-established precedent, the TUF violates the Uniformity Clause.

¶37 At its root, the clause serves "to protect the citizen against unequal, and consequently unjust taxation." Gottlieb v. City of Milwaukee, 33 Wis. 2d 408, 426, 147 N.W.2d 633 (1967) (quoting Weeks v. City of Milwaukee, 10 Wis. 186, 201 (1860)). The seminal case on the Uniformity Clause, Gottlieb, identified several principles of uniformity:

> 1. For direct taxation of property, under the uniformity rule there can be but one constitutional class. 2. All within that class must be taxed on a basis of equality so far as practicable and all property taxed must bear its burden equally on an ad valorem basis. 3. All property not included in that class must be absolutely exempt from property taxation. 4. Privilege taxes are not direct taxes on property and are not subject to the uniformity rule. 5. While there can be no classification of property for different rules or rates of property taxation, the legislature can classify as between property that is to be taxed and that which is to be wholly exempt, and the test of such classification is reasonableness. 6. There can be variations in the mechanics of property assessment or tax imposition so long as the resulting taxation shall be borne with as nearly as practicable equality on an ad valorem basis with other taxable property.

3

Id. at 423-24.

¶38 As indicated in Gottlieb, the Uniformity Clause applies to property taxes—recurring direct taxes on real estate—as opposed to transactional taxes such as those imposed on income or sales. Columbia County v. Wis. Ret. Fund, 17 Wis. 2d 310, 325, 116 N.W.2d 142 (1962); Telemark Dev., Inc. v. Dep't of Revenue, 218 Wis. 2d 809, 825-26, 581 N.W.2d 585 (Ct. App. 1998) (citing State ex rel. Atwood v. Johnson, 170 Wis. 218, 242, 175 N.W. 589 (1919)). "[W]hen property is the object of taxation, it should all alike, in proportion to its value, contribute towards paying the expense of such benefits and protection. These are plain and obvious propositions of equity and justice, sustained as we believe by the very letter and spirit of the constitution." Gottlieb, 33 Wis. 2d at 419 (quoting Knowlton v. Bd. of Supervisors of Rock Cnty., 9 Wis. 378 (*410), 388 (*420) (1859)). "Generally, this requires that real property is taxed according to its fair market value." Applegate-Bader Farm, LLC v. Wis. Dep't of Revenue, 2021 WI 26, ¶5, 396 Wis. 2d 69, 955 N.W.2d 793; Wis. Stat. § 70.32(1).

¶39 A core principle of uniformity requires all properties subject to taxation to be taxed the same, in proportion to their value. "Where a property tax is levied, there can be no classification which interferes with substantial uniformity of rate based on value." Elsner, 28 Wis. 2d at 107. "For the direct method of taxing property, taxation on property so-called, as to the rule of uniformity, there can be but one constitutional class. All not included therein must be

4

absolutely exempt from such taxation. All within such class must be taxed based on a basis of equality so far as practicable." Id. at 108 (quoting Chi. & N.W. Ry. v. State, 128 Wis. 553, 603-04, 108 N.W. 557 (1906)); see also Gottlieb, 33 Wis. 2d at 418-19; U.S. Oil Co. v. City of Milwaukee, 2011 WI App 4, ¶23, 331 Wis. 2d 407, 794 N.W.2d 904 (citing State ex rel. Hensel v. Town of Wilson, 55 Wis. 2d 101, 106, 197 N.W.2d 794 (1972)) ("[T]he method or mode of taxing real property must be applied uniformly to all classes of property within the tax district.").

¶40 The rule of uniformity has been held inapplicable to special assessments, which are based on a determination of specific tangible benefits conveyed to the property subject to the assessment. Elsner, 28 Wis. 2d at 108. The assessment must be "fair, equitable, and in proportion to the benefits accruing to the property." CED Props., LLC v. City of Oshkosh, 2018 WI 24, ¶21, 380 Wis. 2d 399, 909 N.W.2d 136. The benefit attached to special assessments may be narrow or broad in scope and, in some circumstances, may be applied to all property in the municipality. Duncan Dev. Corp v. Crestview Sanitary Dist., 22 Wis. 2d 258, 264-65, 125 N.W.2d 617 (1964) (concluding a sanitary district that benefits the entire town may be financed by special assessment because the degree of benefit varies between different properties).

¶41 Applying these longstanding rules to the ordinance before us, the TUF does not survive constitutional scrutiny. As previously discussed, municipalities fund utility districts

5

through taxation of property. As a property tax, this taxation is subject to the rule of uniformity, and the funding must be raised through ad valorem taxes on property in the district. Within the district, there can be but one class of taxable property, and all property within the class must be taxed at the same rate.

¶42 As implemented, the TUF fails on several fronts. First, by applying a fixed fee to all residential property in the district, despite their varying fair market values, the TUF imposes an impermissible variable rate of taxation on different homes. Second, by applying a different methodology to commercial properties based on estimated road use rather than the value of those properties, the TUF creates multiple classes of property.

¶43 The Town argues the TUF should be exempt from the rule of uniformity because the calculation of tax takes into account the benefit each property receives from access to the Town's roads. In the Town's view, the TUF is sufficiently similar to a special assessment, allowing taxation of properties corresponding to the degree of benefit conveyed by the road construction. This reasoning cannot be reconciled with the law.

¶44 As a preliminary matter, the utility district statute draws a distinction between property taxes and special assessments. Wisconsin Stat. § 66.0827(1)(b) permits public improvements "not paid for by special assessment" to be "paid from the district fund under sub. (2)." Under § 66.0827(2), "[t]he fund of each utility district shall be provided by

6

taxation of the property in the district[.]" The Town identifies nothing in the law that would exempt this sort of "taxation of the property" from the uniformity requirement provided it comes close enough to resembling a special assessment.

¶45 Even if the TUF were comparable to a special assessment, it does not satisfy the legal characteristics of one. "Public improvements usually fall into one of two categories: general or local. A general improvement is one that confers a general benefit, that is, a 'substantially equal benefit and advantage' to the property of the whole community[.]" Genrich v. City of Rice Lake, 2003 WI App 255, ¶8, 268 Wis. 2d 233, 673 N.W.2d 361 (citing Duncan, 22 Wis. 2d at 264). "In contrast, a local improvement, although incidentally beneficial to the public at large, is primarily made for the accommodation and convenience of inhabitants in a particular locality and confers 'special benefits' to their properties." Id.

¶46 A special benefit must have "the effect of furnishing an uncommon advantage to a property differing in kind, rather than in degree, from the benefits enjoyed by the general public." CED Props., 380 Wis. 2d 399, ¶37. To claim specific benefits are conveyed to a property by a public improvement, the details and scope of the public improvement must be known, and the specific benefits conveyed to particular properties identified. In the absence of these details, it is not possible to determine whether the tax is "fair, equitable, and in

7

proportion" to the benefits conveyed to a given property as uniformity requires. The Town established the TUF to raise general funds for improving roads throughout the municipality on an ongoing basis. While individual properties will benefit from improvements to the streets on which they are located, the cost of any improvement is not isolated to the properties located on a particular street. As a result, the tax is not proportional to the benefits received, which are enjoyed by the general public.

¶47 Additionally, properties do not benefit equally from each investment under the Town's road construction plan. In Duncan, a new water tower was constructed that increased water pressure and capacity across the entire district simultaneously. 22 Wis. 2d at 264. In contrast, Town roads will be reconstructed piece by piece over many years. Each piece of road will substantially benefit certain properties but bring little to no benefit to others in the district. The road improvements the Town would fund with the TUF do not share the same characteristics as improvements funded through a special assessment.

¶48 Finally, a special assessment is calculated based on the benefit conveyed to the property by the public improvement itself. For example, when a sidewalk is added to a specific street, the special assessment to fund it reflects the resulting benefit to properties on that street. In the case of the TUF, the tax is based not on the individualized benefits of the particular improvement, but on estimated use of the

8

municipality's roads. The TUF does not depend upon whether the roads a property actually uses are improved or not. A special assessment may not be imposed for access to existing public infrastructure.

¶49 Unlike a special assessment imposed one time to fund a particular improvement, The Town would impose the TUF on a recurring basis to maintain the Town's roads indefinitely. When a municipality undertakes ongoing road maintenance, it must be funded through its general property tax levy. Because all properties in the Town benefit from having adequate transportation infrastructure, all property owners must uniformly bear the costs of maintaining it, in proportion to the value of their properties in the district. The Wisconsin Constitution does not permit property taxation based on factors other than property value, unless the prerequisites for a special assessment are met. As the Town concedes, the TUF is not a special assessment. The TUF is a tax on property, which must be based on market value in order to comply with the Uniformity Clause. Because the TUF is based on the estimated number of vehicle trips generated by each property rather than the property's value, the TUF violates the Uniformity Clause. For the benefit of the public, the court should have said so.

¶50 I am authorized to state that Justice PATIENCE DRAKE ROGGENSACK joins this concurrence.

9